# Jacob May, Appellant, *v.* Mayer Troutman.

*Partnership ownership of real estate—Tenancy in common.*

Real estate, purchased and used as partnership property, does not constitute the owners tenants in common; after the active prosecution of the business is discontinued, the partnership affairs not having been finally settled, it remains a partnership asset, in the absence of proof of conversion by settlement of the partnership affairs, or otherwise.

*Partnership—Lease of real estate—Authority to lease.*

One partner, having been expressly authorized to effect a proposed advantageous lease, of partnership real estate which was partly occupied, to the knowledge of both parties, by a tenant under an unexpired lease, will be held to have authority to buy out the unexpired term and to deduct the sum so paid from the rent collected, provided the sum so paid is reasonable.

*Practice, Superior Court—Defective assignment.*

An assignment which designates error in the answer to a point is defective under Rule XVI. and will not be considered where it not only fails to set out the point totidem verbis and as required, but does not even set out the same in substance.

Argued Dec. 16, 1896. Appeal, No. 134, Nov. T., 1896, by plaintiff, from judgment of C. P. No. 1, Phila. Co., March T.; 1895, No. 1268, on verdict for defendant. Before WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit for money had and received. Before BIDDLE, P. J.

The facts sufficiently appear from the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) in refusing to affirm plaintiff's first point, which was as follows: " That said plaintiff and said defendant, being tenants in common of the premises No. 312 Market street, the said defendant without the knowledge and consent of said plaintiff had no authority in law to expend and apply the proportion and share of said rents due to said plaintiff from the tenant in possession under the lease dated the 13th of November, 1894, without proof that the same was absolutely necessary and provided for in the said agreement of lease.

(2) In refusing to charge the jury as requested by the second point, submitted by the plaintiff and in charging the jury as follows :

" That as Mr. May signed a lease under date of the 13th of November, 1894, leasing from the first day of January, 1895, for five years, the whole of the premises to John M. Maris & Co., knowing that part of the premises had been let to William D. Munier & Co., and that their term did not expire until the 1st of January, 1896, Mr. Troutman had a right to suppose that he had authority from his partner to enter into an arrangement with Munier & Co. to enable him to give up possession to Maris & Co. on the day named, and to pay a reasonable amount to him to bring about that object, of which he himself paid one half." (3) In charging the jury to find a verdict for defendant.

*Joseph L. Tull,* for appellant.

*Emanuel Furth,* with him *Jacob Singer,* for appellee.

OPINION BY WICKHAM, J., February 16, 1897 :

Jacob May and Mayer Troutman, at one time partners in the mercantile business, together owned and held, as a partnership asset, certain real estate, being a store property on Market street in Philadelphia. That it was partnership property is shown by the plaintiff's own testimony, no deeds or written agreements being offered in evidence on either side, hence the assumption of his counsel, that the parties were ordinary tenants in common and must be deemed such in determining their rights as between themselves, is not warranted.

The property was valuable, but for two years prior to October, 1894, the owners were unable to rent any part thereof, except the third floor which was leased to one William D. Munier. About the 1st of August, 1894, May went to Salt Lake City, where he remained until March, 1895. Before starting, he had the following conversation with Troutman, according to the undisputed testimony of the latter : " Troutman, I am tired of having that store empty; you take hold of it and put your sign out, and try to rent it, because it is a good location." Troutman replied : " That store is in very bad condition, some rain has come in. If you would like me to put it in order, I will."

May said: " Go ahead and have everything put in good order and see if you can get it rented."

Early in October, 1894, J. M. Maris & Co., who seem to have been regarded as very desirable persons for tenants, looked at the building with a view to rent it. They insisted, however, on having the whole building, and also that certain improvements should be made by the owners. Thereupon Troutman wrote May, telling him of these facts, also stating that Munier was absent, that he had written him asking him to vacate, and expected an answer in a few days. On October 22, 1894, May telegraphed, in answer, as follows: " Rent the store, and if possible get from the party the interest of cost of elevator included in the rent." The following month, a lease for five years, at an annual rental of $3,700, to take effect January 1, 1895, was made to J. M. Maris & Co. It was signed by Troutman in Philadelphia, and by May in Salt Lake City, and returned to Troutman for delivery. In order to get Munier out, Troutman was obliged to release him from rent amounting to $200, and pay him in cash a like sum.

While the lease was used and referred to at the trial by the court, counsel, and witnesses, strangely enough it is not printed in either appellant's or appellee's paper-books. We gather from the testimony that it contained stipulations, that the lessors should put in an elevator and have the interior of the building kalsomined. In addition, it appears, that Troutman under a separate contract with the lessees, had the exterior painted. This, we think he had a right to do under the authority given him by May to " go ahead and have everything put in good order." Even without such special authority, he could, under the circumstances, do what was reasonably necessary to save the building from dilapidation or make it productive until sold or otherwise converted, and deduct the cost from the rents; it not having been shown that the partnership affairs had been finally settled between the ex-partners. It must be borne in mind, that city merchants of any standing, and able to pay big rents, object to doing business in a shop or store having a dirty and dilapidated exterior.

Coming now to the item of $200 paid Munier, and which seems to be the real bone of contention between the parties, we are of the opinion that the trial judge was right in holding, that

Troutman had the power to make this payment for himself and May, and that the only question for the jury, in relation thereto, was as to the reasonableness of the amount. When May, in answer to Troutman's letter, telegraphed him on October 22, 1894, to rent the premises, he knew that some arrangement would have to be made with Munier, else the lessees in view could not be secured. When he signed the lease, he must have known that if it were delivered, and he of course returned it for delivery, unless Munier could be induced to leave, he, May and his partner, would be liable to the lessees in an action for damages. It can hardly be supposed that he expected Troutman to throw Munier out by main force contrary to law, or remove him by some method of hypnotic suggestion. His words and conduct must be deemed sufficient authority to Troutman to make any reasonable bargain with Munier to quit the premises, leaving entirely out of the question Troutman's implied general authority as a partner.

Thus far we have considered the case broadly on its merits, more so indeed than the assignments of error require. Turning to the assignments of error, the first complains of the refusal of the court to affirm the plaintiff's first point. This point was properly refused for two reasons: first, because it assumes, contrary to the evidence, that the plaintiff and defendant were tenants in common in the ordinary sense of the word; and second, because the uncontradicted evidence as to the authority given the defendant by the plaintiff, before the latter started for Salt Lake City, to put the premises in good order, is wholly ignored. Even if the parties were tenants in common, in the strictest sense, the authority thus conferred would be sufficient, it not being contended that the painting, the only improvement not specifically required by the lease, was not fairly necessary or that it was too costly.

The second assignment will not be considered, as it offends against Rule 16 of this court, which provides that where the error charged relates to the answer to a point, the point must be quoted totidem verbis. The assignment alleges error in refusing the plaintiff's second point, which is not set forth even in substance. Incidentally we may say that the answer to this point, looking at all the evidence, was correct.

The third assignment, viz: " That the court erred in charg-

ing the jury to find a verdict for the defendant," is based upon a misapprehension of the charge. The learned trial judge did not give binding instructions to the jury, but left it to them to decide whether the payment to Munier was reasonable or otherwise. This fell short of telling them, without qualification, to find for the defendant.

The specifications of error are all overruled and the judgment affirmed.